## AFFIDAVIT IN SUPPORT OF APPLICATION FOR ARREST WARRANT

I, Danielle Ray, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Washington Field Office ("WFO"), and have been so assigned since 2009. I have spent the entirety of my FBI career working on national security investigations. During this time, I have received training at the FBI Academy located at Quantico, Virginia, specific to both counterterrorism and counterintelligence and espionage investigations. From October 2012 until March of 2018, I was assigned to a counterterrorism squad. I am currently assigned to investigate counterintelligence and espionage matters and have been so assigned since March of 2018. Based on my training and experience, I am familiar with efforts used to unlawfully collect and disseminate sensitive government information, including classified national defense information.

2. Your affiant is currently investigating the activities of MARIAM TAHA THOMPSON ("THOMPSON"), whom your affiant believes willfully and unlawfully retained classified national defense information in violation of 18 U.S.C. § 793(e). These acts occurred abroad, out of the jurisdiction of any particular State or district and are thus subject to venue in this District pursuant to 18 U.S.C. § 3239. Your affiant submits this complaint in support of the arrest of THOMPSON.

3. The facts in this affidavit come from your affiant's personal observations, training and experience, and information obtained from other U.S. Government officers, agents, and

witnesses. This affidavit is intended to show merely that there is sufficient probable cause for THOMPSON's arrest and does not set forth all of your affiant's knowledge about this matter.

## STATUTORY AUTHORITY AND DEFINITIONS

4.  For the reasons set forth below, there is probable cause to believe that THOMPSON violated Title 18, United States Code, Section 793(e).

5.  Under 18 U.S.C. § 793(e), "[w]hoever having unauthorized possession of, access to, or control over any document . . . or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation . . . willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it" shall be fined or imprisoned not more than ten years, or both.

6.  Under Executive Order No. 13526, information in any form may be classified if it: (1) is owned by, produced by or for, or is under the control of the United States Government; (2) falls within one or more of the categories set forth in the Executive Order [Top Secret, Secret, and Confidential]; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

7.  Where such unauthorized disclosure could reasonably result in damage to the national security, the information may be classified as "Confidential" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in serious damage to the national security, the information may be classified as "Secret" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in exceptionally grave

damage to the national security, the information may be classified as "Top Secret" and must be properly safeguarded.

8. Classified information of any designation may be shared only with persons determined by an appropriate United States Government official to be eligible for access, and who possess a "need to know." Among other requirements, in order for a person to obtain a security clearance allowing that person access to classified United States Government information, that person is required to, and must agree to, properly protect classified information by not disclosing such information to persons not entitled to receive it, by not unlawfully removing classified information from authorized storage facilities, and by not storing classified information in unauthorized locations. If a person is not eligible to receive classified information, classified information may not be disclosed to that person. In order for a foreign government to receive access to classified information, the originating United States agency must determine that such release is appropriate.

9. Pursuant to Executive Order No. 13526, classified information contained on automated information systems, including networks and telecommunications systems, that collect, create, communicate, compute, disseminate, process, or store classified information must be maintained in a manner that: (1) prevents access by unauthorized persons; and (2) ensures the integrity of the information.

10. 32 C.F.R. Parts 2001 and 2003 regulate the handling of classified information. Specifically, 32 C.F.R. § 2001.43, titled "Storage," regulates the physical protection of classified information. This section prescribes that Secret and Top Secret information "shall be stored in a

GSA-approved security container, a vault built to Federal Standard (FHD STD) 832, or an open storage area constructed in accordance with § 2001.53." It also requires periodic inspection of the container and the use of an Intrusion Detection System, among other things.

## PROBABLE CAUSE

11. THOMPSON is a contract linguist with Worldwide Language Resources, and is currently assigned to a Special Operations Task Force ("Task Force") facility in Erbil, Iraq. THOMPSON has been employed with the Task Force since August 2016, and has been located at the facility in Erbil since mid-December 2019. During her time at the facility in Erbil, THOMPSON has held a TOP SECRET U.S. government security clearance and has had access to TOP SECRET national defense information.

12. THOMPSON received her TOP SECRET U.S. government security clearance from the Department of Defense in 2012. Previously, in 2009, THOMPSON had received a SECRET U.S. government security clearance. To obtain those clearances, THOMPSON had to undergo a background investigation and sign certain non-disclosure and user agreements outlining the potential consequences of mishandling classified national defense information.

13. Starting on or about December 30, 2019, a day after U.S. airstrikes against Iranian-backed forces in Iraq, and the same day protesters stormed the U.S. embassy in Iraq to protest those strikes, audit logs show a notable shift in THOMPSON's network activity on networked Department of Defense systems accredited to process and store information up to the SECRET level. A review of THOMPSON's activities on those government-owned systems showed that, beginning on that date, THOMPSON accessed information she did not have a legitimate need to

access. Specifically, from December 30, 2019, to February 10, 2020, THOMPSON accessed approximately 57 files concerning eight human intelligence sources. These files contained classified national defense information including true names, personal identification data, background information, and photographs of the human sources, as well as operations cables detailing information the human sources provided to the United States government.

14.     During a court-authorized search of THOMPSON's living quarters in Erbil on or about February 19, 2020, FBI special agents discovered, concealed beneath THOMPSON's mattress in THOMPSON's living quarters, a handwritten note in Arabic ("the Note"). THOMPSON's living quarters are locked and she has exclusive use of the living quarters. I have reviewed a translation of the Note and confirmed it contains the true names of certain human assets. Specifically, the Note states that the named human assets were collecting information. The Note further contains an instruction that the human assets' phones should be monitored and a named individual should be warned. I have confirmed that the human assets were, in fact, collecting information on behalf of the United States government. Further, the named individual to be warned is affiliated with a designated foreign terrorist organization and was, in fact, a target of the United States. I have confirmed that the Note contained national defense information classified at the SECRET level. THOMPSON's living quarters are not an authorized location for the storage of classified national defense information. The unauthorized disclosure of the information in the Note could reasonably be expected to cause serious damage to the national security of the United States and could jeopardize the safety of the human assets listed in the Note.

15. Network activity logs show that on two consecutive days in January 2020, THOMPSON accessed two separate intelligence reports regarding one of the human assets identified in true name in the Note. Both reports had clear classification markings noting that the reports themselves and the human asset's identity information were classified at the SECRET level.

## **CONCLUSION**

16. Your affiant submits that the facts set forth in this affidavit establish probable cause to believe THOMPSON violated 18 U.S.C. Section 793(e). Therefore, your affiant respectfully requests this Court issue an arrest warrant for THOMPSON.

Respectfully submitted,

_____
Danielle Ray
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on February \_\_\_, 2020

_____
THE HONORABLE G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE